ERIC J. AMDURSKY (S.B. #180288)
eamdursky@omm.com
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, California 94025-7019
Telephone:  (650) 473-2600
Facsimile:  (650) 473-2601

RYAN W. RUTLEDGE (S.B. #222642)
rrutledge@omm.com
KELLY S. WOOD (S.B. #267518)
kwood@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Telephone:  (949) 823-6900
Facsimile:  (949) 823-6994

Attorneys for Plaintiff
EXTREME REACH, INC.

FILED
CLERK, U.S. DISTRICT COURT

OCT 1 1 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXTREME REACH, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SPOTGENIE PARTNERS, LLC, ROBERT PORTER, GREGORY STIRLING, and DOUGLAS WILLIAMSON,<br><br>Defendants. | Case No. CV13-7563 CBM-JCG<br><br>**COMPLAINT OF EXTREME REACH, INC. FOR:**<br><br>**(1) MISAPPROPRIATION OF TRADE SECRETS**<br>**(2) BREACH OF CONTRACT - NON-DISCLOSURE AGREEMENTS**<br>**(3) TORTIOUS INTERFERENCE WITH CONTRACT – NON-DISCLOSURE AGREEMENTS**<br>**(4) TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE – CUSTOMER RELATIONSHIPS**<br>**(5) UNFAIR COMPETITION**<br>**DEMAND FOR JURY TRIAL**<br><br>Complaint Filed:  October 11, 2013. |

For its Complaint, Plaintiff Extreme Reach, Inc. ("Extreme Reach") states and alleges as follows:

## INTRODUCTION

1.      Defendants SpotGenie Partners, LLC. ("SpotGenie"), Robert Porter ("Porter"), Gregory Stirling ("Stirling"), and Douglas Williamson ("Williamson") all simultaneously resigned from their employment with Extreme Reach, without prior notice, after they all spent the last week of their employment downloading valuable and confidential information from Extreme Reach's Customer List in a brazen, orchestrated scheme to steal Extreme Reach's trade secrets and proprietary information for use in SpotGenie's directly competing business.  Extreme Reach seeks to secure the return of all of Extreme Reach's trade secrets and proprietary materials in Defendants' possession and to enjoin Defendants from obtaining any commercial advantage or unjust enrichment from their misappropriation of Extreme Reach's trade secret or proprietary information. Extreme Reach also seeks compensatory and punitive damages from Defendants for their wrongful conduct.

## THE PARTIES

2.      Plaintiff Extreme Reach is a Delaware corporation, with its headquarters located in Needham, Massachusetts.  Extreme Reach is qualified to do business in California.

3.      On information and belief, defendant SpotGenie is incorporated in Georgia, with its headquarters located in Atlanta, Georgia.  On information and belief, Extreme Reach alleges that SpotGenie does business in California.

4.      On information and belief, defendant Williamson is a resident of the County of Los Angeles and a current employee of SpotGenie.  Williamson is a former employee of Extreme Reach who worked for Extreme Reach in Los Angeles.

5.     On information and belief, defendant Porter is a resident of the County of Los Angeles and a current employee of SpotGenie.  Porter is a former employee of Extreme Reach who worked for Extreme Reach in Los Angeles.

6.     On information and belief, defendant Stirling is a resident of the County of Los Angeles and a current employee of SpotGenie.  Stirling is a former employee of Extreme Reach who worked for Extreme Reach in Los Angeles.

## JURISDICTION AND VENUE

7.     The Court has subject matter jurisdiction over Extreme Reach's claims under 28 U.S.C. § 1332.  Plaintiff Extreme Reach is a citizen of Massachusetts, Defendant SpotGenie is a citizen of Georgia, Defendants Porter, Williamson, and Stirling are citizens of California.  The amount in controversy exceeds $75,000.

8.     Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events that gave rise to Extreme Reach's claims took place within the District, Defendants' tortious conduct was directed at this District, and because Extreme Reach was injured by Defendants' tortious conduct committed in this District.

## GENERAL ALLEGATIONS

### Extreme Reach's Business

9.     Extreme Reach is a digital distributor of video and audio advertising.  Headquartered in Needham, Massachusetts, Extreme Reach has numerous offices throughout the country, including New York, Chicago, Burbank, San Francisco, Dallas, Detroit, Louisville, and Seattle.  Within the United States, Extreme Reach's business is divided into three regions:  the West Region, the Central Region, and the East Region.

10.     Extreme Reach's role in the advertising industry is to deliver advertisements to broadcasters (including cable head-ends and networks) that air the advertisements.

11.     Extreme Reach has devoted years, and made a substantial financial investment, developing relationships with over 3,000 customers: companies who advertise their products and services in a variety of markets and who rely on Extreme Reach to deliver their advertisements to broadcasters. Extreme Reach's customers include Fortune 50 companies that produce advertisements for nation-wide distribution with local variations for each market, regional and local companies that produce advertisements intended for more targeted audiences, and ad agencies.

**Defendants Are Former Extreme Reach Employees And**

**The Direct Competitor Of Extreme Reach That Hired Them**

12.     Williamson, Porter, and Stirling were employed by Extreme Reach as Sales Managers in the West Region (the "Sales Manager Defendants"). The three Sales Manager Defendants were the entire television sales force in Los Angeles and, along with one other individual, made up the entire team of sales Managers in the West Region.

13.     Extreme Reach's Sales Managers are responsible for increasing revenue through implementation of sales and customer service strategies, pitching new services to existing customers, and identifying, researching, and contacting potential customers.

14.     On or about March 9, 2012, Extreme Reach provided Williamson with an offer letter (the "Williamson Offer Letter") offering him employment with Extreme Reach in the position of Regional Sales Manager commencing on March 26, 2012.  Williamson signed the Williamson Offer Letter on March 9, 2012, agreeing that "[d]uring [his] employment with the Company, [he would] be required to follow all of the Company's internal policies and to conduct [his] business activities at all times in accordance with the highest legal, ethical and professional standards."

15.     By signing the Williamson Offer Letter, Williamson also agreed that, were he to "gain access to certain non-public information relating to the Company's business," that he would "keep such information in confidence, except as necessary to serve the Company's legitimate purposes, and [he] further agree[d] that upon [his] termination from the Company, [he would] return to the Company all documentation, correspondence and all other data of the Company then in [his] possession and all copies thereof."

16.     On March 10, 2012, Williamson signed an "Employee Invention, Non-Disclosure, and Non-Solicitation Agreement" (the "Williamson NDA") wherein Williamson acknowledged that his "relationship with the Company is one of high trust and confidence by reason of [his] access to and contact with the trade secrets and confidential and proprietary information of the Company and of others through the Company." In the Williamson NDA, Williamson agreed that he would "not at any time, either during [his] employment with the Company or thereafter, disclose to others, or use for [his] own benefit or the benefit of others, any of the Developments or any confidential, proprietary or secret information owned, possessed or used by the Company." Williamson also expressly acknowledged that "Proprietary information includes . . . customer and supplier lists."

17.     In signing the Williamson NDA, Williamson additionally agreed that he would "not recruit or otherwise solicit or induce any employees of the Company, to terminate their employment with, or otherwise cease their relationships with, the Company or any of its subsidiaries during [his] employment with the Company and for a period of 12 full months thereafter."

18.     On June 2, 2011, Extreme Reach offered Stirling employment with Extreme Reach in the position of Sales Manager in the West Region commencing on or about June 20, 2011.

19. On June 3, 2011, Stirling signed an "Employee Invention, Non-Disclosure, and Non-Solicitation Agreement" (the "Stirling NDA") wherein Stirling acknowledged that his "relationship with the Company is one of high trust and confidence by reason of [his] access to and contact with the trade secrets and confidential and proprietary information of the Company and of others through the Company." Stirling agreed that he would "not at any time, either during [his] employment with the Company or thereafter, disclose to others, or use for [his] own benefit or the benefit of others, any of the Developments or any confidential, proprietary or secret information owned, possessed or used by the Company." Stirling further expressly acknowledged that "Proprietary information includes . . . customer and supplier lists."

20. In signing the Stirling NDA, Stirling additionally agreed that he would "not recruit or otherwise solicit or induce any employees of the Company, to terminate their employment with, or otherwise cease their relationships with, the Company or any of its subsidiaries during [his] employment with the Company and for a period of 12 full months thereafter."

21. On or about February 21, 2013, Extreme Reach provided Porter with an offer letter (the "Porter Offer Letter") offering him a position as a Sales Manager in the West Region commencing on or about February 28, 2013. Porter signed the Porter Offer Letter on February 21, 2013, agreeing that "[d]uring [his] employment with the Company, [he would] be required to follow all of the Company's internal policies and to conduct [his] business activities at all times in accordance with the highest legal, ethical and professional standards."

22. By signing the Porter Offer Letter, Porter also agreed that, were he to "gain access to certain non-public information relating to the Company's business," he would "keep such information in confidence, except as necessary to serve the Company's legitimate purposes, and [he] further agree[d] that upon [his] termination from the Company, [he would] return to the Company all

1   documentation, correspondence and all other data of the Company then in [his]

2   possession and all copies thereof."

3           23.     On February 21, 2013, Porter signed an "Employee

4   Invention, Non-Disclosure, and Non-Solicitation Agreement" (the "Porter NDA")

5   wherein Porter acknowledged that his "relationship with the Company is one of

6   high trust and confidence by reason of [his] access to and contact with the trade

7   secrets and confidential and proprietary information of the Company and of others

8   through the Company." Porter agreed that he would "not at any time, either during

9   [his] employment with the Company or thereafter, disclose to others, or use for

10  [his] own benefit or the benefit of others, any of the Developments or any

11  confidential, proprietary or secret information owned, possessed or used by the

12  Company." Porter further expressly acknowledged that "Proprietary information

13  includes . . . customer and supplier lists."

14          24.     In signing the Porter NDA, Porter additionally agreed that he

15  would "not recruit or otherwise solicit or induce any employees of the Company, to

16  terminate their employment with, or otherwise cease their relationships with, the

17  Company or any of its subsidiaries during [his] employment with the Company and

18  for a period of 12 full months thereafter."

19          25.     Based on information and belief, immediately before coming

20  to work for Extreme Reach, Porter worked as the Vice President of Sales, Western

21  Region for SpotGenie, a direct competitor of Extreme Reach.

22          26.     In order to avoid any misuse of former employer

23  information, Extreme Reach requires all new hires (including Williamson, Porter,

24  and Stirling) to sign "Pre & Post-Employment Rules Regarding Compliance With

25  Obligations To Former Employers" ("Former Employer Obligations") wherein each

26  employee agrees that, "[i]n performing [his] duties on behalf of Extreme Reach,

27  [he] must not use or disclose to anyone any trade secrets, confidential business or

28  technical information, or know-how not generally known to the public

EXTREME REACH INC.'S COMPLAINT

("Confidential Information") that [he] learned in the course of [his] employment, consultancy, or contractor relationship with any previous person, entity, or third party."

## The Sales Manager Defendants' Sudden Departure And
## Premeditated Theft Of Extreme Reach's Confidential Information

27. On the morning of September 26, 2013, Williamson, Stirling, and Porter each resigned from their employment with Extreme Reach, leaving only one Sales Manager for the entire West Region.

28. As Stirling and Williamson explained in their resignation letters, their resignations would necessarily be effective immediately, as they were going to work for a direct competitor of Extreme Reach. Porter likewise resigned effective immediately, though he claimed he was not going to work for a competitor.

29. On information and belief, upon their resignation from Extreme Reach, all three Sales Manager Defendants immediately began working for SpotGenie.

30. Amongst other security measures, to protect Extreme Reach's confidential and proprietary information, in order to access the Company's customer lists and other information, an individual must enter a login name and password.

31. Following their sudden departures, Extreme Reach reviewed the computer logs showing the Sales Manager Defendants' activities based on their login name and password in the days leading up to their resignations.

32. What Extreme Reach discovered was alarming: in the five days prior to their resignation, all three Sales Manager Defendants had downloaded and viewed numerous customer reports that had no relationship to the duties they were then performing in their positions as Sales Managers.

EXTREME REACH INC.'S COMPLAINT

33.     On or about September 24, 2013, Williamson accessed rates and contact information for one Extreme Reach customer, as well as account profile information for another customer.  Significantly, neither customer was assigned to Williamson, and he had no legitimate reason to access such information regarding those customers in the performance of his duties for Extreme Reach, especially when he resigned (effective immediately) two days later.

34.     On or about September 25, 2013, the day before he resigned, Williamson also generated a broader Year-to-Date Revenue Report for Extreme Reach's customers, as well as the contact information and billing rates for one specific customer.  There was no legitimate reason for Williamson to access or use this information in connection with any duties he was performing for Extreme Reach, especially when he resigned (effective immediately) the following day.

35.     On or about September 25, 2013, the day before he resigned, Stirling generated a report detailing all of Extreme Reach's sales in 2012, a Complete Sales Prospect Report, a 2013 detailed sales report for all regions and sales representatives, and two detailed monthly revenue reports for all of the clients he managed.  That same day, while logged into Extreme Reach's computer network, Stirling used his Extreme Reach e-mail account to forward all of those reports to his personal Yahoo! account.  There was no legitimate reason for Stirling to access this information in connection with any duties he was performing for Extreme Reach, especially when he resigned (effective immediately) the following day.

36.     Later in the evening, Stirling also remotely accessed account profile information for 30 of Extreme Reach's customers, and rate information for five of Extreme Reach's customers.  There was no legitimate reason for Stirling to access this information in connection with any duties he was performing for Extreme Reach, especially when he resigned (effective immediately) the following day.

37.     Forensic analysis on Porter's computer showed that on or about September 21, 2013, he generated a Year-to-Date Revenue Report on Extreme Reach's customers, and on or about September 22, 2013, he accessed profile information on 69 of Extreme Reach's customers and downloaded the rate card for one particular customer that was not assigned to him. There was no legitimate reason for Porter to access this information in connection with any duties he was performing for Extreme Reach.

38.     Between September 22, 2013, and September 24, 2013, Porter accessed rate and billing data for 370 Extreme Reach customers. There was no legitimate reason for Porter to access this information in connection with any duties he was performing for Extreme Reach.

39.     On or about September 25, 2013, Porter also generated and downloaded a list of approximately five thousand of Extreme Reach's broadcasters. There was no legitimate reason for Porter to access this information in connection with any duties he was performing for Extreme Reach.

40.     By way of comparison, Extreme Reach analyzed the frequency that all of its sales managers nationwide were accessing customer data over the 30 days immediately prior to the resignation of the three Sales Manager Defendants. Porter accessed both the customer rate cards, as well as customer profile information at a rate significantly higher than any other Sales Manager at Extreme Reach.

41.     Specifically, Porter accessed the billing rates of clients almost 400 times in the 30 days prior to his resignation, while the next highest access by a Sales Manager was just over 150 times and the average amount of times that the other sales managers (excluding the Sales Manager Defendants) accessed the billing of rates of clients was just over 64 times.

42.     Similarly, Porter accessed customer profile information over 900 times in the 30 days prior to his resignation, while the next highest access by a Sales Manager was just over 200 times.

43.     On information and belief, there was no legitimate reason for Porter to be accessing customer profile information and billing rates at a rate so substantially higher than his peers, particularly given that his sales levels were so substantially lower than his peers.

44.     Extreme Reach's customer and revenue data would potentially be valuable to a competitor like SpotGenie by allowing the competitor to undercut Extreme Reach's prices and offer services at a rate known to be lower than Extreme Reach.  And that is exactly what SpotGenie did.

45.     Almost immediately after the Sales Manager Defendants resigned, one of Extreme Reach's long-time customers contacted Extreme Reach and requested a negotiation on Extreme Reach's pricing.  A few days later, the customer informed Extreme Reach that it wished to negotiate pricing because it had received an unsolicited offer from SpotGenie to perform additional services at a lower price.

46.     On information and belief, SpotGenie would not have known to approach Extreme Reach's long-time customer without information having been misappropriated by the Sales Managers.

47.     On information and belief, utilizing confidential and proprietary information stolen from Extreme Reach, SpotGenie and the Sales Managers have unlawfully contacted other Extreme Reach customers to offer its services at a price Defendants know to be lower than Extreme Reach as a result of their unlawful misappropriation of Extreme Reach's confidential and proprietary information.

48.     On information and belief, with respect to each and every allegation set forth in Paragraphs 1-47, inclusive, Defendants and each of them

1    conspired and agreed to undertake the above-described acts in furtherance of their

2    conspiracy, with knowledge of the nature and goals of the conspiracy and its

3    unlawful purpose.

4                           **FIRST CAUSE OF ACTION**

5                  **MISAPPROPRIATION OF TRADE SECRETS**

6                           **Against All Defendants**

7                     (California Civil Code §§ 3426 *et seq.*)

8            49.     Extreme Reach realleges each and every allegation set forth

9    in Paragraphs 1 through 48, inclusive, and incorporates them herein by reference.

10           50.     Extreme Reach's trade secret and confidential, proprietary

11   materials include documents and information that derive independent economic

12   value from not being generally known to the public or to other persons who can

13   obtain economic value from their disclosure or use, including but not limited to

14   customer information.  These materials and information are the subject of

15   reasonable efforts by Extreme Reach to maintain their secrecy.  The documents and

16   information constitute "trade secrets" under California Civil Code Section 3426.1.

17           51.     In violation of California's Uniform Trade Secrets Act,

18   Defendants willfully and maliciously misappropriated Extreme Reach's trade

19   secrets through improper means by stealing records from Extreme Reach's

20   Customer List and other computerized databases.

21           52.     On information and belief, Defendant Stirling willfully and

22   maliciously misappropriated Extreme Reach's trade secrets by stealing records

23   from Extreme Reach, including but not limited to a 2012 Sales Report, a Complete

24   Sales Prospect Report, a 2013 detailed sales report for all regions and sales

25   representatives, two detailed monthly revenue reports for all clients he managed

26   while employed by Extreme Reach, account profile information for 30 of Extreme

27   Reach's customers, and rate information for five customers in Extreme Reach's

28   system.

53.     On information and belief, Defendant Porter willfully and maliciously misappropriated Extreme Reach's trade secrets by stealing records from Extreme Reach, including but not limited to a Year-To-Date Revenue Report on Extreme Reach's customers, account profile information on 69 Extreme Reach customers, a Rate Card for a specific customer that was not assigned to Defendant Porter, rate and billing data for 370 Extreme Reach customers, and a listing of approximately 5,000 of Extreme Reach's broadcasters with configuration details.

54.     On information and belief, Defendant Williamson willfully and maliciously misappropriated Extreme Reach's trade secrets by stealing records from Extreme Reach, including but not limited to a complete Year-to-Date Customer Revenue Report, as well as billing records for several of Extreme Reach's customers who were not assigned to Defendant Williamson.

55.     On information and belief, Defendant SpotGenie has accessed, received, stored, and/or utilized the information stolen by the Sales Manager Defendants for its own benefit.

56.     By reason of the above-alleged acts and conduct of Defendants, Extreme Reach has been damaged, and it will suffer great and irreparable harm and damage.  The amount of this irreparable harm will be difficult to ascertain, and Extreme Reach will be without an adequate remedy at law.

57.     Extreme Reach is entitled to preliminary and permanent injunctive relief restraining Defendants, their officers, agents, employees, and all persons acting in concert with them, from using or disclosing Extreme Reach's trade secrets and restraining Defendants from obtaining any benefits from their wrongful use of Extreme Reach's trade secrets.

58.     Extreme Reach is further entitled to an order requiring Defendants, their employers, agents, employees, and all persons acting in concert with them, to return to Extreme Reach any and all of its trade secrets and confidential, proprietary materials, including but not limited to any and all materials

1  consisting of, incorporating, referencing, or derived from Extreme Reach's trade

2  secrets and confidential, proprietary information.

3        59.     Extreme Reach is further entitled to recover from Defendants

4  for the actual damages sustained by Extreme Reach as a result of Defendants'

5  wrongful acts described in this complaint.  The amount of such damages cannot be

6  determined precisely at this time.  Defendants' acts of misappropriation were both

7  willful and malicious, and Extreme Reach is entitled to an award of punitive

8  damages and attorney fees against Defendants.  Extreme Reach is further entitled to

9  recover from Defendants the gains, profits, advantages, and unjust enrichment that

10  they have obtained as a result of their wrongful acts as described herein.  Extreme

11  Reach is at present unable to ascertain the full extent of these gains, profits,

12  advantages and unjust enrichment.

13                    **SECOND CAUSE OF ACTION**

14  **BREACH OF CONTRACT - NON-DISCLOSURE AGREEMENTS**

15           **Against the Sales Manager Defendants**

16        60.     Extreme Reach realleges each and every allegation set forth

17  in Paragraphs 1 through 59, inclusive, and incorporates them herein by reference.

18        61.     When hired by Extreme Reach, each of the Sales Manager

19  Defendants executed a Non-Disclosure Agreement and signed an offer letter that

20  contained the general terms and conditions of their employment with Extreme

21  Reach.

22        62.     Extreme Reach has performed all conditions, covenants, and

23  promises required to be performed by it with respect to the Sales Manager

24  Defendants' Non-Disclosure Agreements and offer letters, except for those

25  conditions, covenants, and promises that have been excused by reason Sales

26  Manager the Sales Manager Defendants' breaches alleged herein.

27        63.     Extreme Reach is informed and believes, and on that basis

28  alleges, that each Sales Manager Defendant has breached his contractual obligations

to Extreme Reach and has breached the Non-Disclosure Agreement and respective offer letters by, *inter alia*, improperly removing from Extreme Reach's business premises and misusing, or conspiring and preparing to remove and misuse, materials constituting Extreme Reach's trade secrets and other confidential, proprietary information, including but not limited to information contained in Extreme Reach's Customer List.

64.     Additionally, on information and belief, one or more of the Sales Manager Defendants unlawfully solicited one or more of the other Sales Manager Defendants to terminate their employment with Extreme Reach in violation of the Non-Solicitation provision of the Sales Manager Defendants' Non-Disclosure Agreements.

65.     As a direct and proximate result of the Sales Manager Defendants' breaches of their Non-Disclosure Agreements, Extreme Reach has been damaged in a sum according to proof at the time of trial.

66.     Unless and until the Defendants are restrained from the actions described herein, Extreme Reach will continue to suffer great and irreparable harm for which money damages would be an inadequate remedy. Extreme Reach is therefore entitled to a preliminary and permanent injunction enjoining the Sales Manager Defendants from further violations of their respective Non-Disclosure Agreements and offer letters.

**THIRD CAUSE OF ACTION**

**TORTIOUS INTERFERENCE WITH CONTRACT - NON-DISCLOSURE AGREEMENTS**

**Against All Defendants**

67.     Extreme Reach realleges each and every allegation set forth in Paragraphs 1 through 66, inclusive, and incorporates them herein by reference.

68.     Extreme Reach is party to valid, binding agreements containing confidentiality and non-disclosure covenants that it entered into with the

Sales Manager Defendants.  Each of the Defendants had knowledge of each of the obligations of each other defendant under each of the agreements by virtue of the knowledge of their own similar obligations, by virtue of their former employment with Extreme Reach, by virtue of their affiliation with SpotGenie, and/or by being informed of those obligations by the Defendants or others.

69.     Each of the Defendants intentionally induced breaches of each of the foregoing agreements between Extreme Reach and each other Defendant.

70.     Each of the Defendants acted maliciously and with ill will to secure the breach of the foregoing agreements.

71.     As a direct and proximate result of each of the Defendants' wrongful, unjustified, and intentional acts, each of the Sales Manager Defendants has breached their respective agreements with Extreme Reach.

72.     As a direct and proximate result of each of the Defendants' tortious interference with Extreme Reach's agreements, Extreme Reach has been damaged, and is entitled to recover damages, in an amount to be proven at trial. Because the actions of each of the Defendants were both willful and malicious, Extreme Reach is further entitled to an award of punitive damages against each of the Defendants.

## FOURTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE – CUSTOMER RELATIONSHIPS
### Against All Defendants

73.     Extreme Reach realleges each and every allegation set forth in Paragraphs 1 through 72, inclusive, and incorporates them herein by reference.

74.     Extreme Reach has contracts and economic relationships with its customers.  These contracts and relationships are of economic benefit to

1    Extreme Reach and contain the probability of future economic benefits to Extreme
2    Reach.
3             75.     Defendants had knowledge of Extreme Reach's contracts and
4    economic relationships with these customers and intentionally, willfully and
5    maliciously interfered with these contracts and economic relationships by
6    misappropriating and unlawfully disclosing Extreme Reach's confidential and
7    proprietary information and by using this information, or enabling it to be used, to
8    solicit Extreme Reach's customers.  To the extent these contracts and economic
9    relationships were terminable at will by the customers, Defendants' interference
10   with them was independently wrongful.
11            76.     Defendants intended to disrupt, and did disrupt, Extreme
12   Reach's contract and economic relationships with these customers.
13            77.     As a direct and proximate result of the wrongful, unjustified,
14   and intentional conduct of Defendants, Extreme Reach has been damaged.  Extreme
15   Reach is entitled to recover damages from Defendants in an amount to be proven at
16   trial.  Because the actions of Defendants were both willful and malicious, Extreme
17   Reach is also entitled to an award of punitive damages against Defendants.
18            78.     The acts of Defendants threaten to disrupt and interfere with
19   Extreme Reach's relationships with its customers and cause great and irreparable
20   injury for which there is no adequate remedy at law.  Extreme Reach is, therefore,
21   further entitled to injunctive relief against Defendants.

22                              **FIFTH CAUSE OF ACTION**
23                               **UNFAIR COMPETITION**
24                                **Against All Defendants**
25              (California Business and Professions Code §§ 17200 *et seq.*)
26            79.     Extreme Reach realleges each and every allegation set forth
27   in Paragraphs 1 through 78, inclusive, and incorporates them herein by reference.
28            80.     By the acts alleged in the preceding paragraphs, Defendants

1  have committed business acts and practices that are unlawful and unfair in violation

2  of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-

3  09.

4         81.     Defendants' business acts and practices are unlawful and

5  violate the UCL because Defendants unlawfully misappropriated and converted

6  Extreme Reach's trade secrets and confidential and proprietary information,

7  breached and induced breaches of Extreme Reach's Non-Disclosure Agreements,

8  and tortiously interfered with Extreme Reach's customer contracts and economic

9  relationships.  Defendants' business acts and practices violate California laws.

10         82.     Defendants' business acts and practices are unfair and violate

11  the UCL because Defendants' acts are illegal and impair fair and honest

12  competition and otherwise significantly harm competition in the market for

13  Extreme Reach's services.

14         83.     Defendants have used and may continue to use Extreme

15  Reach's trade secrets and confidential and proprietary business information unless

16  enjoined by this Court.

17         84.     By reason of the alleged acts and conduct of Defendants,

18  Extreme Reach has suffered and will imminently suffer further harm, including the

19  loss of proprietary information and competitive position, the amount of which will

20  be difficult to ascertain.  Extreme Reach will be without an adequate remedy at law.

21  Extreme Reach is entitled to preliminary and permanent injunctive relief.

22

23                          **PRAYER FOR RELIEF**

24         Extreme Reach prays for judgment against Defendants as follows:

25      1.     For temporary, preliminary, and permanent injunction relief, enjoining

26  and restraining Defendants from the wrongful acts and conducts set forth above,

27  including an order that:

28         (a)    SpotGenie Partners, LLC, Robert Porter, Gregory Stirling, and

1  Douglas Williamson are hereby enjoined from any further use or disclosure of

2  Extreme Reach's confidential information or trade secrets, including but not limited

3  to any information contained in Extreme Reach's "Customer List." For purposes of

4  this Order, Extreme Reach's "Customer List" includes information regarding the

5  customer identities of Extreme Reach's customers, the identities of contact persons

6  at those customers, and information regarding the rates customers were offered by

7  Extreme Reach or paid to Extreme Reach, and specifically includes the following:

8  sales reports, sales prospect reports, revenue reports, rate cards, and any reports

9  derived from any Extreme Reach database containing customer rate and/or contact

10  information;

11          (b)    Robert Porter, Gregory Stirling, and Douglas Williamson (the

12  "Sales Managers") are hereby enjoined from soliciting any of the Extreme Reach

13  customers identified in any portion of Extreme Reach's Customer List accessed by

14  any of them during the last week of their employment with Extreme Reach, and

15  SpotGenie Partners, LLC, is hereby enjoined from soliciting those customers to the

16  extent it received any of Extreme Reach's confidential information regarding those

17  customers (including but not limited to information regarding their identities, the

18  identities of contact persons at those customers, and information regarding the rates

19  they were offered by Extreme Reach or paid to Extreme Reach) from the Sales

20  Managers;

21          (c)    SpotGenie Partners, LLC, is hereby enjoined from performing

22  services for any customers it has already solicited, or that it solicits after the date of

23  this Order, after it received any of Extreme Reach's confidential information

24  regarding those customers (including but not limited to information regarding their

25  identities, the identities of contacts at those customers, and information regarding

26  the rates they were offered by Extreme Reach or paid to Extreme Reach) from the

27  Sales Managers.

28          (d)    SpotGenie Partners, LLC, Robert Porter, Gregory Stirling, and

1  Douglas Williamson are hereby enjoined from any further solicitation of Extreme

2  Reach's employees.

3       2.     For an award of restitution, unjust enrichment, compensatory damages,

4  and consequential damages according to proof at trial;

5       3.     For treble damages according to proof at trial;

6       4.     For punitive damages according to proof at trial;

7       5.     For attorney fees and costs of suit herein incurred; and

8       6.     For such other, further, and/or different relief as the Court may deem

9  just and proper.

10       Dated:     October 11, 2013.     ERIC J. AMDURSKY

11       RYAN RUTLEDGE
     KELLY S. WOOD

12       O'MELVENY & MYERS LLP

13

14       By: _Eric Amdursky_

15       Eric J. Amdursky
     Attorneys for Plaintiff
     Extreme Reach, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiff Extreme Reach, Inc. hereby demands trial by jury on each of its claims for relief that are triable before a jury.

Dated:        October 11, 2013.        ERIC J. AMDURSKY
RYAN RUTLEDGE
KELLY S. WOOD
O'MELVENY & MYERS LLP

By: _Eric Amdursky_
Eric J. Amdursky
Attorneys for Plaintiff
Extreme Reach, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Consuelo B. Marshall_____ and the assigned Magistrate Judge is _____Jay C. Gandhi_____ .

The case number on all documents filed with the Court should read as follows:

## 2:13-cv-07563 CBM-JCGx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____October 11, 2013_____                By  SBOURGEOIS_____
Date                                                Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

[x] Western Division          [ ] Southern Division          [ ] Eastern Division
312 N. Spring Street, G-8      411 West Fourth St., Ste 1053   3470 Twelfth Street, Room 134
Los Angeles, CA 90012         Santa Ana, CA 92701             Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| EXTREME REACH, INC. | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| | ) Civil Action No. |
| SPOTGENIE PARTNERS, LLC, ROBERT PORTER, | ) |
| GREGORY STIRLING, and DOUGLAS | ) **CV13-7563** CDM- JCGx |
| WILLIAMSON, | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   SPOTGENIE PARTNERS, LLC, 345 Peachtree Hills Avenue, Suite 400, Atlanta,
Georgia 30305; ROBERT PORTER, 8389 Sedan Avenue, Canoga Park, California
91304; GREG STIRLING, 322 Allendale Road, #106, Pasadena, California 91106; and
DOUGLAS WILLIAMSON, 1427 Barrington Way, Glendale, California 91206.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you
are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.
P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of
the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney,
whose name and address are:
                      Eric J. Amdursky
                      O'Melveny & Myers LLP
                      2765 Sand Hill Road, Menlo Park, CA 94025-7019

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.
You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:   OCT 1 1 2013    _____

*Signature of Clerk or Deputy Clerk*

1184

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

EXTREME REACH, INC.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

SPOTGENIE PARTNERS, LLC, ROBERT PORTER, GREGORY STIRLING, and DOUGLAS WILLIAMSON

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)

O'MELVENY & MYERS LLP
2765 Sand Hill Road, Menlo Park, California 94025-7019
Telephone: (650) 473-2600
Eric J. Amdursky

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1. U.S. Government Plaintiff
- ☐ 2. U.S. Government Defendant
- ☐ 3. Federal Question (U.S. Government Not a Party)
- ☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332; Misappropriation of Trade Secrets; Breach of Non-Disclosure Agreements; Tortious Interference with Non-Disclosure Agreements; Tortious Interference with Prospective Economic Advantage; Unfair Competition.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☒ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number:   CV13-7563

CV-71 (09/13)   CIVIL COVER SHEET   Page 1 of 3

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII.  VENUE:**  Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes  [X] No <br><br> If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Los Angeles | Western |
| | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? <br><br> Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? <br><br> Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| [ ] Yes  [X] No <br><br> If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Los Angeles | [ ] Los Angeles | Western |
| | [ ] Ventura, Santa Barbara, or San Luis Obispo | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | [ ] Riverside or San Bernardino | Eastern |
| | [ ] Other | [ ] Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | [ ] | [ ] | [ ] | [ ] | [X] | [ ] |
| Indicate the location in which a majority of defendants reside: | [X] | [ ] | [ ] | [ ] | [ ] | [ ] |
| Indicate the location in which a majority of claims arose: | [X] | [ ] | [ ] | [ ] | [ ] | [ ] |

| C.1. Is either of the following true? If so, check the one that applies: | C.2. Is either of the following true? If so, check the one that applies: |
|---|---|
| [ ] 2 or more answers in Column C | [ ] 2 or more answers in Column D |
| [ ] only 1 answer in Column C and no answers in Column D | [ ] only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below. | Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below. |
| If none applies, answer question C2 to the right. ➡ | If none applies, go to the box below. ⬇ |

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | WESTERN DIVISION |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X.  SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**   _Eric Andersky_   DATE:  October 11, 2013.

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |